UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA THREET,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

_____/

Case No. 14-10291

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE MICHAEL
HLUCHANIUK

**ORDER OVERRULING IN PART DEFENDANT'S OBJECTIONS [18]; ADOPTING IN PART REPORT AND RECOMMENDATION [17]; AND REMANDING CASE**

Plaintiff seeks review of Defendant's denial of her application for disability benefits. Plaintiff filed a Motion for Summary Judgment [12] on August 26, 2014. Defendant filed a Motion for Summary Judgment [16] on November 17, 2014. On March 9, 2015, the Magistrate Judge filed a Report and Recommendation (R&R) [17] recommending that the Court deny Defendant's motion, grant Plaintiff's motion, and remand for further proceedings. Defendant filed Objections to the Report and Recommendation [18] on March 19, 2015. Plaintiff filed a Response to Defendant's Objections [19] on March 26, 2015.

For the reasons stated below, the Court **OVERRULES IN PART** Defendant's Objections [18] and **ADOPTS IN PART** the R&R [17]. The case is **REMANDED** for further proceedings.

### FACTUAL BACKGROUND

The Court adopts the following description of this case's factual background from the R&R:

> Plaintiff filed the instant claim for disability insurance and supplemental security income benefits on January 18, 2011, alleging disability beginning January 9, 2011. (Dkt. 9-5, Pg ID 453-461). Plaintiff's claims were initially denied by the Commissioner on June 15, 2011. (Dkt. 9-4, Pg ID 392). Plaintiff requested a hearing and on August 7, 2012, plaintiff testified before Administrative Law Judge ("ALJ") Penny Loucas who considered the case de novo. (Dkt. 9-2, Pg ID 313-349). In a decision dated September 27, 2012, the ALJ found that plaintiff was not disabled. (Dkt. 9-2, Pg ID 296-307).
> …
> … The ALJ applied the fivestep disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since January 9, 2011, the alleged onset date. (Dkt. 9-2, Pg ID 298). At step two, the ALJ found that plaintiff had the following severe impairments: asthma, migraine headaches, degenerative disc disease, and depression complicated by polysubstance abuse in remission. *Id*. Plaintiff claimed she also suffers from fibromyalgia but the ALJ could not discern such a diagnosis from the records and hence characterized it as a non-medical impairment with overlapping symptoms to her other medically determined impairments. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 9-2, PgID 298-300).
> The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform light work, except:

> she can occasionally climb ramps, stairs, ladders, ropes and scaffolds, stoop, kneel, crouch and crawl. She can frequently balance. She needs to avoid concentrated exposure to extreme temperatures, wetness, humidity, vibrations, respiratory irritants, and hazards. She can understand, remember and carry out instructions consistent with performing work at the SVP1 through SVP 3 levels. She can maintain concentration, persistence and pace over a normal eight hour workday and a 40 hour work week. She has no limitation for social interaction and she can adjust to routine changes in the work place setting.

(Dkt. 9-2, Pg ID 300). At Step Four, the ALJ found that plaintiff could perform her past relevant work as a file clerk, fast food worker and waitress and therefore, plaintiff had not been under a disability from the alleged onset date through the date of the decision. (Dkt. 9-2, Pg ID 306-307).

Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review on November 19, 2013. Plaintiff filed the instant suit for judicial review on January 22, 2014.

## ANALYSIS

The R&R concluded that remand is necessary because the ALJ relied on an RFC finding unsupported by substantial evidence. Specifically, the R&R concluded that in omitting any mental limitation from the RFC, the ALJ improperly "disregarded" Dr. Balunas's opinion on Plaintiff's mental limitations and "substituted her own medical opinion against the weight of the evidence." In its Objections[18], Defendant argues that the R&R misinterpreted Sixth Circuit

3

precedent on "disregarding" consulting opinions. Defendant argues that, while the ALJ may not *ignore* consulting opinions favorable to the claimant, the ALJ is free to *reject* any such opinion in fulfilling the ALJ's duty to independently determine a claimant's RFC. Defendant further argues that the ALJ properly rejected Dr. Balunas's opinion because it was apparently based on Ms. Bonanno's opinion, which in turn was poorly supported.

The Court agrees with Defendant that it was not per se error for the ALJ to reject Dr. Balunas's characterization of Plaintiff's mental RFC, even though it was the only such characterization by a medical professional in the record. *See* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as … your residual functional capacity … the final responsibility for deciding these issues is reserved to the Commissioner."); *id.* § 404.1527(e)(2)(i) ("Administrative law judges are not bound by any findings made by State agency medical or psychological consultants …."). Moreover, since Dr. Balunas never examined Plaintiff and Ms. Bonnano examined her only once, neither was a treating physician. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). Since they were not treating physicians, the ALJ was not strictly required to

4

articulate good reasons for rejecting their opinions. *Ealy*, 594 F.3d at 514 (citing *Smith*, 482 F.3d at 876).

However, the opinions of Dr. Balunas and Ms. Bonnano were not the only evidence supporting Plaintiff's claimed mental limitations; Plaintiff's own testimony also supported her claim. The ALJ summarized some of Plaintiff's testimony as follows:

> Ms. Threet asserted at the hearing that … [b]ecause of her bipolar disorder she has difficulty interacting with other individuals. … She has difficulty concentrating …. Ms. Threet testified her severe pain causes her loss of concentration and she loses her train of thought during a conversation. She needs reminders.

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible …." The Court must review whether the ALJ's "explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.") The Court concludes that they are not.

5

The ALJ did not identify any way in which the psychological opinions or other medical evidence of record undermined Plaintiff's testimony concerning her mental limitations. In fact, the ALJ identified only one source of evidence that arguably undermined Plaintiff's testimony: the observation of Plaintiff by unidentified field office employees. Specifically, the ALJ stated the following:

> I note that Social Security Administration field office observed Ms. Threet was neatly dressed and groomed. She was accompanied by her boyfriend. She previously filed for disability benefits in 2007 for bipolar, paranoia, but currently denied these disabilities and was not being treated for those conditions. She did not want to allege any mental impairments. She was pleasant and cooperative. No difficulties were noted such as tremors, etc. (Ex. 4E, p. 3).

An ALJ's assessment of a claimant's credibility is owed deference in part because the ALJ has an opportunity to observe the claimant's demeanor. *Jones*, 336 F.3d at 476. Here, however, the ALJ's opinion makes no mention of *the ALJ's* observation of Plaintiff. The Court does not owe deference to the ALJ's credibility assessment to the extent it is based on the reported observation of Plaintiff by unidentified field office employees.

The ALJ's failure to identify persuasive evidence undermining Plaintiff's testimony is especially troubling given that her testimony is supported in several respects by the opinions of Dr. Balunas and Ms. Bonnano. Though the ALJ provided reasons for discrediting their opinions, the ALJ's stated reasoning is

6

flawed. In support of the ALJ's rejection of Dr. Balunas's opinion, Defendant states only that "Dr. Balunas apparently based his opinion entirely on Ms. Bonnano's [opinion]," which in turn was poorly supported. This was not the reason given by the ALJ for rejecting Dr. Balunas's opinion. When setting forth the reasoning for her RFC finding, the ALJ addressed Dr. Balunas's opinion as follows:

> I give some weight to the mental residual functional capacity assessment of State Agency psychologist, Leonard C. Balunas, Ph.D. done on June 6, 2011 (Ex. 4A, p. 12). While I accept the opinions regarding most of the mental residual functional capacity, I do not accept the limitation that [Plaintiff] is limited to simple one and two step tasks. His use of these descriptors without providing more details as to whether a person can also exercise judgment or can make decisions or whether the person can manage machine paced driven type work reduces the clarity of his opinion and hence the weight it is afforded. Regardless, it [is] my job as the ALJ to reconcile the inconsistencies in the opinions and to provide an appropriately defined residual functional capacity. Hence, I decline to give any weight to his limitations.

The ALJ only articulated a reason for rejecting one limitation identified by Dr. Balunas: Plaintiff's limitation to simple one- and two-step tasks. However, Dr. Balunas identified other limitations. As recounted in the R&R, Dr. Balunas "found plaintiff to be moderately limited in her ability … to maintain attention and concentration for extended periods, to interact appropriately with the general

7

public, and to respond appropriately to changes in the work setting." These findings support Plaintiff's testimony concerning her mental limitations.

Defendant argues that the ALJ identified a reasoned basis for giving *Ms. Bonnano's* opinion no weight, and that these reasons sufficed to discredit Dr. Balunas's opinion as well because Dr. Balunas "apparently based his opinion on Ms. Bonnano's [opinion]." However, the ALJ's stated reasons for rejecting Ms. Bonnano's opinion were flawed. For instance, the ALJ stated that Ms. Bonnano "did not appear to critically and objectively assess [Plaintiff's] statements." In support of this critique, the ALJ mentioned that Ms. Bonnano described her impression of Plaintiff as "slightly guarded." Ms. Bonnano was neither accepting nor rejecting any statement made by Plaintiff when she recorded this description, and it thus appears irrelevant to the issue of whether Ms. Bonnano appropriately assessed Plaintiff's statements. The ALJ proceeded to state the following:

> [Plaintiff] denied a history of inpatient psychiatric treatment but [Ms. Bonanno] noted in her prior records there was evidence that she was hospitalized on two occasions, once at the age of 16 and then in 2002. The Easter Seal record appeared to indicate that this history was reported to them by the claimant. "She states she has a history of two psychiatric hospitalizations one at age sixteen and one possibly in 2002." (Ex. 6F, pg 2) Despite this inconsistency in her records, [Ms. Bonnano] did not appear to question the reliability of [Plaintiff's] reports.

8

The ALJ thus identified an inconsistency between Plaintiff's statements to Ms. Bonnano and her prior statements to other medical professionals. However, as the ALJ herself explained, Ms. Bonnano acknowledged this inconsistency. This suggests that she *did* "question the reliability" of Plaintiff's statements.

The ALJ proceeded to fault Ms. Bonnano for neglecting another inconsistency—where none, in fact, existed. The ALJ stated the following:

> [Plaintiff] reported to [Ms. Bonnano] that she had been clean since July 28, 2007; however, [Ms. Bonnano] did not inquire nor consider the information in the Easter Seals record that indicated [Plaintiff] reported being arrested for DUI in 2006 and spending October to December 2006 in jail for the violation. She also reported that she was to be on probation until March 2008 for this violation. At the time of her initial assessment with Easter Seals in April of 2007, she was still on probation and reported that she had been clean since October 2006, after spending time allegedly in treatment programs. (Ex. 6F, pg. 2 and pg. 3).

In other words, in April 2007 Plaintiff reported to Easter Seals that her substance abuse problem had been in remission since October 2006, and in May 2011 she reported to Ms. Bonnano that the problem had been in remission since July 2007. These statements are not, as the ALJ suggested, inconsistent. The ALJ thus failed to explain why Ms. Bonnano's failure to "consider" this information detracted from the weight of her opinion.

Though it is unclear from the ALJ's opinion, the ALJ may have discredited Plaintiff's testimony in part due to her failure to seek mental health treatment.

9

Social Security Ruling 96-7p states that a claimant's testimony "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." 1996 WL 374186, at *7 (1996). However, Ruling 96-7p also provides that an ALJ "*must not* draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.* (emphasis added). The ruling lists examples of sound explanations for noncompliance, recognizing, for instance, that a claimant's poverty may interfere with her ability to obtain or adhere to treatment. *Id.* at *8 ("The individual may be unable to afford treatment and may not have access to free or low-cost medical services."). Further, the Sixth Circuit has joined other federal courts in recognizing that for a claimant suffering from mental illness, noncompliance with treatment may be a symptom of her condition, rather than evidence that her condition is not disabling. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)).

10

Here, during his opening statement at the hearing, Plaintiff's attorney opined that Plaintiff has not been receiving the mental health medication she should be receiving. When the ALJ asked why Plaintiff is not receiving the medication, Plaintiff's attorney responded that she "has no funds and she has no access to the medication through community health." When he added that Plaintiff's current physicians have focused on other symptoms, the ALJ wondered whether her physicians do not consider her mental condition "bad enough." Plaintiff's counsel responded that Plaintiff's medical records consistently reflect a diagnosis of bipolar affective disorder. Later, Plaintiff disclosed that she receives treatment at "St. Joe's Hospital" and treatment for fibromyalgia from Dr. Densley at CBM Medical. The ALJ did not ask any questions about the availability of mental health treatment from these sources or their evaluations of Plaintiff's mental health. In her written opinion, however, the ALJ noted Plaintiff's claim to be unable to afford mental health treatment and suggested that her claim was discredited by her treatment at "St. Joe's" and at CBM Medical.

These facts are insufficient to support an inference that Plaintiff is not receiving mental health treatment because her symptoms are less severe than she claims. The ALJ failed to confirm the extent to which Plaintiff's low-income health program provides free or affordable mental health treatment. In fact, the

11

ALJ exhibited little interest in Plaintiff's treatment aside from her repeated criticism of Dr. Densley's prescription of Vicodin to treat fibromyalgia.[1] The ALJ's suggestion of incompetence or impropriety on the part of Plaintiff's treating physician, however, only underscores the uncertainty regarding the reasons for Plaintiff's lack of mental health treatment. If the ALJ relied on the absence of mental health treatment to discredit Plaintiff's testimony, it was improper to do so without attempting to further develop the record. *See* Social Security Ruling 96-7p, 1996 WL 374186, at *3 (1996) ("When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements.").

In sum, the ALJ's explanation for discrediting Plaintiff's testimony concerning her mental limitations was not "reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court therefore adopts the R&R to the extent that it recommends remand. On remand, the ALJ should reassess Plaintiff's credibility in a manner that corrects the deficiencies

---

[1] The ALJ described the prescription as "particularly disturbing" given Plaintiff's documented history of Vicodin abuse. The ALJ did not find that Plaintiff was presently engaged in substance abuse; in fact, she explicitly found that Plaintiff's depression was complicated by polysubstance abuse *in remission*.

identified in this Order, including the ALJ's failure to adequately assess the extent to which Plaintiff's credibility is supported by the medical opinion evidence.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant's Objections [18] are **OVERRULED IN PART**.

**IT IS FURTHER ORDERED** that the Report and Recommendation [17] is **ADOPTED IN PART**.

**IT IS FURTHER ORDERED** that the case is **REMANDED** for a reassessment of Plaintiff's credibility and further proceedings consistent with the reassessment.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: March 30, 2015					Senior United States District Judge